1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

4

Sep 15, 2020

SEAN F. McAVOY, CLERK

5

## UNITED STATES DISTRICT COURT

6

## EASTERN DISTRICT OF WASHINGTON

7    DENZEL, J.,[1]

8                      Plaintiff,

        vs.

9

10   ANDREW M. SAUL,
     COMMISSIONER OF SOCIAL
     SECURITY,

11                      Defendant.

12

|  |  |
|---|---|
| No. 2:19-cv-00344-MKD | |

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 14, 15

13          Before the Court are the parties' cross-motions for summary judgment.  ECF

14   Nos. 14, 15.  The parties consented to proceed before a magistrate judge.  ECF No.

15   6.  The Court, having reviewed the administrative record and the parties' briefing,

16

17   _____

18   [1] To protect the privacy of plaintiffs in social security cases, the undersigned

19   identifies them by only their first names and the initial of their last names.  *See*

20   LCivR 5.2(c).

ORDER - 1

1 is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

2 motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

3                                    **JURISDICTION**

4       The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

5 1383(c)(3).

6                               **STANDARD OF REVIEW**

7       A district court's review of a final decision of the Commissioner of Social

8 Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

9 limited; the Commissioner's decision will be disturbed "only if it is not supported

10 by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

11 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

12 reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

13 (quotation and citation omitted).  Stated differently, substantial evidence equates to

14 "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

15 citation omitted).  In determining whether the standard has been satisfied, a

16 reviewing court must consider the entire record as a whole rather than searching

17 for supporting evidence in isolation.  *Id.*

18       In reviewing a denial of benefits, a district court may not substitute its

19 judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

20 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER - 3

1    The Commissioner has established a five-step sequential analysis to

2    determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§

3    404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner

4    considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i),

5    416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

6    Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

7    404.1520(b), 416.920(b).

8    If the claimant is not engaged in substantial gainful activity, the analysis

9    proceeds to step two. At this step, the Commissioner considers the severity of the

10    claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the

11    claimant suffers from "any impairment or combination of impairments which

12    significantly limits [his or her] physical or mental ability to do basic work

13    activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c),

14    416.920(c). If the claimant's impairment does not satisfy this severity threshold,

15    however, the Commissioner must find that the claimant is not disabled. 20 C.F.R.

16    §§ 404.1520(c), 416.920(c).

17    At step three, the Commissioner compares the claimant's impairment to

18    severe impairments recognized by the Commissioner to be so severe as to preclude

19    a person from engaging in substantial gainful activity. 20 C.F.R. §§

20    404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

1  education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

2  416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

3  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

4  404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

5  work, analysis concludes with a finding that the claimant is disabled and is

6  therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

7      The claimant bears the burden of proof at steps one through four above.

8  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

9  step five, the burden shifts to the Commissioner to establish that 1) the claimant is

10  capable of performing other work; and 2) such work "exists in significant numbers

11  in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

12  *Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

13      "A finding of 'disabled' under the five-step inquiry does not automatically

14  qualify a claimant for disability benefits."  *Parra v. Astrue*, 481 F. 3d 742, 746 (9th

15  Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)).

16  When there is medical evidence of drug or alcohol addiction (DAA), the ALJ must

17  determine whether the drug or alcohol addiction is a material factor contributing to

18  the disability.  20 C.F.R. § 404.1535(a).  In order to determine whether drug or

19  alcohol addiction is a material factor contributing to the disability, the ALJ must

20  evaluate which of the current physical and mental limitations would remain if the

ORDER - 6

1  claimant stopped using drugs or alcohol, then determine whether any or all of the

2  remaining limitations would be disabling.  20 C.F.R. §§ 404.1535(b)(2),

3  416.935(b)(2).  If the remaining limitations would not be disabling, drug or alcohol

4  addiction is a contributing factor material to the determination of disability.  *Id.*  If

5  the remaining limitations would be disabling, the claimant is disabled independent

6  of the drug or alcohol addiction and the addiction is not a contributing factor

7  material to disability.  *Id*.  The claimant has the burden of showing that drug and

8  alcohol addiction is not a contributing factor material to disability.  *Parra*, 481

9  F.3d at 748.

10      Social Security Ruling ("SSR") 13-2p provides guidance for evaluating

11  whether a claimant's substance use is material to the disability determination.  SSR

12  13-2p, 2013 WL 621536, at *3 (Feb. 20, 2013).  It instructs adjudicators to "apply

13  the appropriate sequential evaluation process twice.  First, apply the sequential

14  process to show how the claimant is disabled.  Then, apply the sequential

15  evaluation process a second time to document materiality[.]"  *Id*. at *6.

16                    **ALJ'S FINDINGS**

17      On December 1, 2016, Plaintiff applied both for Title II disability insurance

18  benefits and Title XVI supplemental security income benefits alleging a disability

19  onset date of January 1, 2013.  Tr. 89, 200-14, 218-24.  The applications were

20  denied initially and on reconsideration.  Tr. 116-22, 125-30.  Plaintiff appeared

ORDER - 7

1 before an administrative law judge (ALJ) on August 8, 2018. Tr. 33-68. On

2 September 26, 2018, the ALJ denied Plaintiff's claim. Tr. 12-32.

3      At step one of the sequential evaluation process, the ALJ found Plaintiff,

4 who met the insured status requirements through September 30, 2016, has not

5 engaged in substantial gainful activity since January 1, 2013. Tr. 17-18. At step

6 two, the ALJ found that Plaintiff has the following severe impairments: depressive

7 disorder; panic disorder; alcohol use disorder, in early remission; and cocaine use

8 disorder, in early remission. Tr. 18.

9      At step three, the ALJ found Plaintiff does not have an impairment or

10 combination of impairments that meets or medically equals the severity of a listed

11 impairment, both with and without the substance abuse disorders. Tr. 18. The

12 ALJ then concluded that, based on all of the impairments, including the substance

13 abuse disorders, Plaintiff has the RFC to perform a full range of work at all

14 exertional levels, with the following nonexertional limitations:

15
16
17
18
> [Plaintiff] is limited to simple, routine tasks (unskilled work); no
> interaction with the public (can be around the public, but no direct
> contact); occasional interaction with coworkers with no tandem tasks.
> In addition, due to mental impairments and substance abuse,
> [Plaintiff] would miss at least three days of work per month and
> would be off task and unproductive 20% of the workday, in addition
> to regularly scheduled breaks and rest periods.

19 Tr. 20.

20

ORDER - 8

1    The ALJ further found that, if Plaintiff "stopped the substance use," he

2    would have the RFC to perform a full range of work at all exertional levels but

3    with the following nonexertional limitations:

> [Plaintiff] is limited to simple, routine tasks (unskilled work); no
> interaction with the public (can be around the public but no direct
> contact); and occasional interaction with coworkers with no tandem
> tasks.

6    Tr. 20.

7    At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 25.  At

8    step five, the ALJ found that, considering Plaintiff's age, education, work

9    experience, testimony from the vocational expert, and RFC based on all of the

10    impairments, including the substance use disorders, there are no jobs that exist in

11    significant numbers in the national economy that Plaintiff could perform.  Tr. 25-

12    26.  The ALJ found that, if Plaintiff stopped the substance use, considering his age,

13    education, work experience, testimony from the vocational expert, and RFC, there

14    would be a significant number of jobs in the national economy that Plaintiff could

15    perform, such as laundry worker II, cleaner II, semi-trucks, and office cleaner I.

16    Tr. 26.  Therefore, the ALJ concluded the substance use disorders are a

17    contributing factor material to the determination of disability because Plaintiff

18    would not be disabled if he stopped the substance use, and that, as a result, Plaintiff

19    was not under a disability, as defined in the Social Security Act, from the alleged

20    onset date of January 1, 2013, through the date of the decision.  Tr. 27.

ORDER - 9

On August 15, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly determined Plaintiff's substance use disorder is a material contributing factor to the determination of disability;

2.  Whether the ALJ properly evaluated the medical opinion evidence; and

3.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 14 at 2.

## DISCUSSION

**A. Evidence of Drug and Alcohol Abuse (DAA)**

Plaintiff challenges the ALJ's finding that his substance abuse materially contributed to his limitations.  ECF No. 14 at 4-8; ECF No. 16 at 2-3.  Social Security claimants may not receive benefits where DAA is a material contributing factor to disability.  20 C.F.R. §§ 404.1535(b), 416.935(b); 42 U.S.C. § 423(d)(2)(c).  DAA is a material contributing factor if the claimant would not meet

the SSA's definition of disability if the claimant were not using drugs or alcohol.

20 C.F.R. §§ 404.1535(b), 416.935(b).  Thus, in DAA cases, the regulations

require that the ALJ evaluate which of the claimant's current limitations would

remain if the claimant stopped using drugs or alcohol and determine whether any

or all of the remaining limitations would be disabling.  20 C.F.R. §§

404.1535(b)(2), 416.935(b)(2).[2]

For cases involving co-occurring mental disorders, SSR 13-2p(7) states:

a.  Many people with DAA have co-occurring mental disorders; that
is, a mental disorder(s) diagnosed by an acceptable medical source
in addition to their DAA.  We do not know of any research data
that we can use to predict reliably that any given claimant's co-
occurring mental disorder would improve, or the extent to which it
would improve, if the claimant were to stop using drugs or alcohol.

b.  To support a finding that DAA is material, we must have evidence
in the case record that establishes that a claimant with a co-
occurring mental disorder(s) would not be disabled in the absence
of DAA.  Unlike cases involving physical impairments, we do not
permit adjudicators to rely exclusively on medical expertise and
the nature of a claimant's mental disorder.

---

[2] The Ninth Circuit has noted that SSR 13-2p "contemplates abstinence periods of

'weeks' or 'months or even longer.'"  *See Cothrell*, 742 F. App'x at 235 (rejecting

claimant's allegation that ALJ was required to consider a 6-day period of

abstinence).

ORDER - 11

SSR 13-2p, 2013 WL 621536, at *9.  Ultimately, Plaintiff has the burden of showing that DAA is not a material contributing factor to disability.  *See Parra*, 481 F.3d at 748.

The ALJ found Plaintiff's substance abuse, particularly cocaine and alcohol, is a material contributing factor to his disability.  Tr. 20, 27.  Plaintiff contends that that the ALJ erred in assessing his limitations in the absence of DAA by "wholly overlooking significant evidence in the record of persistent disabling mental health limitations despite sobriety."  ECF No. 14 at 5-6.  Defendant contends that the ALJ reasonably relied on the evidence to conclude that Plaintiff failed to carry his burden of establishing substance use was not a contributing factor material to his disability.  ECF No. 15 at 6-7.  While Plaintiff testified at the hearing that his clean and sober date was April 27, 2017, Tr. 39, he argues that the ALJ overlooked both periods of sobriety prior to that date, during which his symptoms persisted, and severe symptoms reported after that date.  ECF No. 14 at 6-7.  SSR 13-2p requires the ALJ to consider periods of abstinence from drug and alcohol use that are:

> long enough to allow the acute effects of drug and alcohol use to abate.  Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated.  Adjudicators may draw inferences from such information based on the length of the period(s), how recently the period(s) occurred, and whether the severity of the co-occurring impairment(s) increased after the period(s) of abstinence ended.  To find that DAA is material, we must have evidence in the case record demonstrating that

ORDER - 12

1    any remaining limitations were not disabling during the period.

2    SSR 13-2p at *12.

3        Plaintiff alleges he maintained periods of sobriety that were not considered

4    by the ALJ.  In support, he  cites to treatment records and urinalysis tests (UAs) to

5    document periods of sobriety prior to April 27, 2017.  *See* ECF No. 14 at 5 (citing

6    Tr. 325 (noting Plaintiff was in inpatient treatment from June 15, 2016 through

7    July 6, 2016); Tr. 329 (inpatient treatment assessment noting Plaintiff reported last

8    cocaine use was on June 14, 2016 and last alcohol use was on June 10, 2016); Tr.

9    369 (clean UA on December 14, 2016); Tr. 372-73 (clean UAs on January 4, 2017

10    and January 17, 2017); Tr. 378-79 (at two assessments in October 2016, Plaintiff

11    reported a sobriety date of June 15, 2016 and/or "since inpatient treatment"); Tr.

12    392 (November 28, 2016 treatment record indicates Plaintiff reports he has been

13    sober "greater than eight months"); Tr. 395 (treatment record indicates Plaintiff

14    was in outpatient treatment in December 2016, but there is no mention of

15    substance use); Tr. 404 (January 17, 2017 treatment record indicates Plaintiff

16    reported being sober for approximately six months)).  First, Plaintiff asserts he

17    maintained a period of sobriety for several months, beginning June 15, 2016.  ECF

18    No. 14 at 5.  However, Plaintiff relies on his self-report, and three clean UAs in

19    December 2016 and January 2017, as discussed *supra.*  While Plaintiff had three

20    clean UAs during the time period, Plaintiff tested positive for benzodiazepines on

December 29, 2016, and he reported taking his friends' Xanax in November 2016,

and reported previously taking Xanax "from the streets," Tr. 371, 417, 419, 441,

although Plaintiff argues the test was due to being given Ativan during an

emergency room visit, ECF No. 14 at 20, Tr. 480.  Although Plaintiff had clean

UAs in January 2017, Tr. 372-73, he was charged with a DUI in January 2017.  Tr.

40.

During the alleged period of sobriety between June 2016 and December

2016, and in the months after the reported period of sobriety, the ALJ noted

Plaintiff repeatedly became angry with providers who would not provide

benzodiazepines, resulting in Plaintiff yelling, cursing, and insulting the providers.

Tr. 19, 22 (citing Tr. 395, 417, 422, 431).  While Plaintiff argues his behavior

demonstrates he had continued symptoms even with sobriety because he was angry

and defiant during the reported period of sobriety, Plaintiff's behavior was

repeatedly tied to his seeking a controlled medication.  Tr. 19, 22, 46, 395.

Plaintiff argues that the ALJ erred as he cited to evidence of Plaintiff's symptoms

being tied to substance use in December 2016 and January 2017, when Plaintiff

alleges he was substance-free because of negative drug tests.  ECF No. 14 at 5.

While Plaintiff argues he had continued symptoms despite sobriety through

January 2017, Plaintiff fails to address his reports of using Xanax that was not

prescribed to him in November 2016, how that use may be tied to the positive drug

ORDER - 14

test in December of 2016, and the DUI in January 2017. Plaintiff also does not address evidence that his behavior was linked to seeking Xanax, and Plaintiff's substance abuse treatment counselor's opinion that Plaintiff's focus on anxiety medication was potentially due to Plaintiff's drug withdrawal symptoms, and his finding that there was no evaluation showing anxiety except a single visit where Plaintiff mentioned intermittent anxiety. Tr. 440. Further, Plaintiff relies entirely on his self-report, which the ALJ found unreliable, Tr. 23, to support his argument he was sober after July 2016, as there are no UAs from the time when Plaintiff exited inpatient treatment in July through October 2016. ECF No. 14 at 5. Although Plaintiff contends the ALJ did not cite to any evidence of current substance use, *id.*, the ALJ cited to Plaintiff's January 2017 DUI, Tr. 23. Plaintiff has not demonstrated that the ALJ erred in failing to properly consider the asserted period of sobriety during the months following June 2016.

Next, Plaintiff argues the ALJ's erroneous consideration of the 2016 period of sobriety lead to the ALJ's overall conclusion being skewed that Plaintiff made "significant improvement" after gaining sobriety on April 27, 2017. ECF No. 14 at 7. Plaintiff points to evidence from his January 2018 examination with Dr. Arnold, during which Dr. Arnold found Plaintiff presented as depressed and anxious, with a moderately constricted affect, and abnormal insight and judgment, and he opined Plaintiff has "significant" to severe limitations in numerous basic work activities,

ORDER - 15

the limitations were not primarily caused by drugs or alcohol, and the impairments would persist beyond 60 days of sobriety. *Id.* at 6 (citing Tr. 455-56).

Plaintiff argues that, when compared to the findings assessed in December 2016 by Dr. Cline, Dr. Arnold's findings demonstrate a "marked increase in limitations" despite a lengthier period of abstinence. ECF No. 14 at 6. Plaintiff further notes that in June 2018 he reported isolating at home for weeks at a time and was assessed as having a restricted affect, using minimal words, and being anxious and depressed. *Id.* (citing Tr. 487-89). The cited records indicate Plaintiff was seeking care because he wanted assistance obtaining disability services, he was "required" to be there in order to keep receiving ABD (Aged, Blind or Disabled) DSHS benefits, and he wanted help managing his anxiety. Tr. 487-88. Although the record noted Plaintiff appeared depressed with a restricted affect, he was oriented, had good eye contact, normal thoughts, speech, judgment/insight, attention, and concentration. Tr. 488-89. The ALJ noted Plaintiff had multiple examinations with generally normal findings, including normal attention, concentration, memory, and fund of knowledge, he had generally appropriate behavior at examinations, and he reported attending college classes, running errands, playing basketball, getting along with his roommates, visiting people, reading, and making music. Tr. 23 (citing Tr. 450-56, 485, 488-89). The ALJ

ORDER - 16

1    reasonably found that the medical records demonstrate Plaintiff's symptoms

2    improved after he began maintaining sobriety in April 2017.

3         Next, Plaintiff argues that the ALJ erred by relying on non-examining

4    physician Dr. Winfrey's testimony to find DAA was significant and a primary

5    cause of his symptoms.  ECF No. 14 at 7.  Specifically, Plaintiff claims Dr.

6    Winfrey's testimony was contrary to the SSA's requirement that DAA materiality

7    assessments consider limitations based on the claimant's presentation absent

8    substances, because she simultaneously concluded Plaintiff's symptoms were due

9    to his DAA, yet agreed "I don't really think he is abusing the drugs at the time,"

10   and noted her conclusion was based on his "drug and alcohol history."  ECF No.

11   14 at 8, Tr. 47-48.

12        In her testimony, Dr. Winfrey attributed Plaintiff's aggression to periods

13   when he was seeking Xanax, and stated Plaintiff had an inaccurate perception that

14   Xanax is the only appropriate treatment for him, and she believed his perception

15   was due in part to his past substance use.  Tr. 46-48.  She also believed at least

16   some of those periods during which Plaintiff was behaving aggressive were periods

17   he was using substances.  Tr. 48.  This testimony related only to Plaintiff's

18   aggressive behaviors towards providers when they did not provide Xanax, and

19   while some of the aggressive behavior may have occurred during a period of

20   sobriety, Dr. Winfrey attributed the behavior to Plaintiff seeking Xanax rather than

ORDER - 17

the behavior being a symptom of his mental health conditions. Tr. 46-48.

Regarding Plaintiff's symptoms as a whole, Dr. Winfrey clearly identified April

27, 2017 as Plaintiff's date of continuous sobriety, and noted there were periods of

sobriety that were not sustained, and opined Plaintiff had disabling symptoms

while using substances but the disabling symptoms ceased when he maintained

sobriety. Tr. 42-45.

Further, the ALJ did not rely exclusively on Dr. Winfrey's testimony, as he

also provided an analysis of the medical evidence to support his finding that DAA

is material, therefore his analysis complies with SSR 13-2p. As such, the ALJ did

not err in relying in part on Dr. Winfrey's opinion that Plaintiff's substance use is a

material contributing factor to his disability. Plaintiff also challenged the ALJ's

rejection of Mr. Elster's opinion that Plaintiff had disabling limitations even when

not using substances; this argument is addressed *infra*.

The ALJ's finding that Plaintiff's substance use is a material contributing

factor to his disability is supported by substantial evidence. Plaintiff is not entitled

to remand on these grounds.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ failed to properly weigh the medical opinion

evidence of John Arnold, Ph.D., Holly Petaja, Ph.D., R.A. Cline, Psy.D., and

Brandon Elster, LMHC. ECF No. 14 at 8-18. There are three types of physicians:

ORDER - 18

"(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).  Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

ORDER - 19

F.3d 821, 830-31 (9th Cir. 1995)).  The opinion of a nonexamining physician may

serve as substantial evidence if it is supported by other independent evidence in the

record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered

'[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir.

2014) (alteration in original); *see* 20 C.F.R. §§ 404.1513, 416.913 (2013).[3]

However, an ALJ is required to consider evidence from non-acceptable medical

sources, such as therapists.  20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).[4]  An

ALJ may reject the opinion of a non-acceptable medical source by giving reasons

germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

---

[3] The regulation that defines acceptable medical sources is found at 20 C.F.R. §§

404.1502, 416.902 for claims filed after March 27, 2017.  The Court applies the

regulation in effect at the time the claim was filed.

[4] The regulation that requires an ALJ's consider opinions from non-acceptable

medical sources is found at 20 C.F.R. §§ 404.1502c, 416.920c for claims filed after

March 27, 2017.  The Court applies the regulation in effect at the time the claim

was filed.

1    *1. Dr. Arnold*

2    On January 18, 2018, Dr. Arnold performed a psychological evaluation and

3    provided an opinion Plaintiff's functioning.  Tr. 452-56.  Dr. Arnold diagnosed

4    Plaintiff with early onset persistent depressive disorder, panic disorder without

5    agoraphobia, cannabis and cocaine use disorders in substantial remission, and he

6    noted "antisocial features to personality" as a rule out diagnosis.  Tr. 453.  Dr.

7    Arnold opined Plaintiff's depressed mood causes sleep disruption, impaired

8    energy, concentration and appetite, and his anxiety causes chronic daily panic.  *Id.*

9    He further opined Plaintiff has no to mild limitations in understanding,

10   remembering and persisting in tasks by following short and simple instructions;

11   moderate limitations in understanding, remembering and persisting in tasks by

12   following detailed instructions, learning new tasks, performing routine tasks

13   without special supervision, making simple work-related decisions, asking simple

14   questions or requesting assistance, and communicating and performing effectively

15   in a work setting; marked limitations in performing activities within a schedule,

16   maintaining regular attendance and being punctual without special supervision,

17   being aware of normal hazards and taking appropriate precautions, maintaining

18   appropriate behavior in a work setting, completing a normal workday/workweek

19   without interruptions from psychological symptoms, and setting realistic goals

20   independently; and severe limitations in adapting to changes in a routine work

ORDER - 21

setting.  Tr. 453-54.  Dr. Arnold opined Plaintiff's limitations had an overall

marked severity rating, and the limitations would last 12 months or longer.  Tr.

454.  The ALJ gave Dr. Arnold's opinion little weight.  Tr. 24.  As Dr. Arnold's

opinion is contradicted by the opinion of Dr. Winfrey, Tr. 42-45, the ALJ was

required to give specific and legitimate reasons, supported by substantial evidence,

to reject Dr. Arnold's opinion.  *See Bayliss,* 427 F.3d at 1216.

First, the ALJ found Plaintiff misrepresented his substance abuse history

during Dr. Arnold's examination, resulting in the opinion being based on an

inaccurate picture of Plaintiff's substance use and its impact on Plaintiff's

functioning.  Tr. 24.  An ALJ may properly reject a medical opinion that is

rendered without knowledge of a claimant's substance abuse.  *Cothrell v.*

*Berryhill*, 742 F. App'x 232, 236 (9th Cir. July 18, 2018) (unpublished opinion);

*Chavez v. Colvin*, No. 3:14-cv-01178-JE, 2016 WL 8731796, at *8 (D. Or. July 25,

2016) (unpublished opinion).  Although Plaintiff reported a DUI one year prior,

Plaintiff also informed Dr. Arnold that he had not used cannabis for three years,

nor drank alcohol nor used other drugs for almost two years; given the date of the

examination, Plaintiff reported having been substance-free since January 2017.  Tr.

452.  However, Plaintiff testified that his sobriety date is April 2017.  Tr. 39.

While Plaintiff told Dr. Arnold he had not used cocaine for two years, which

would have been January 2016, Plaintiff admitted to his providers that he used

1  cocaine in June 2016.  Tr. 23 (citing Tr. 329).  As Plaintiff provided inaccurate

2  information to Dr. Arnold regarding his substance use history, this was a specific

3  and legitimate reason to reject Dr. Arnold's opinion.

4       Second, the ALJ found Dr. Arnold's opinion is inconsistent with his own

5  mental status findings.  Tr. 24.  A medical opinion may be rejected if it is

6  unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of*

7  *Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278

8  F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.

9  2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Furthermore, a

10  physician's opinion may be rejected if it is unsupported by the physician's

11  treatment notes.  *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  The ALJ

12  noted Dr. Arnold's examination contained normal mental status findings with the

13  exception of insight and judgment.  Tr. 24.  The ALJ found Dr. Arnold's opinion

14  that Plaintiff has marked limitations in maintaining appropriate behavior is

15  inconsistent with Plaintiff presenting as cooperative and agreeable.  *Id.*  Plaintiff

16  argues the examination notes he was depressed and anxious, with a constricted

17  affect, and as such the examination was not inconsistent with Dr. Arnold's opinion.

18  ECF No. 14 at 11.  However, the examination demonstrated Plaintiff's behavior

19  and findings overall were normal; he had normal thoughts, orientation, perception,

20  memory, concentration, abstract thoughts, and fund of knowledge, and he was

ORDER - 23

cooperative, agreeable, with normal hygiene and attire, logical and progressive speech, and only mildly/moderately depressed/anxious mood.  Tr. 454-55.  This was a specific and legitimate reason to reject Dr. Arnold's opinion.

Third, the ALJ found Dr. Arnold's opinion is inconsistent with the record as a whole, including largely benign mental status findings and Plaintiff's activities of daily living.  Tr. 24.  An ALJ may discredit physicians' opinions that are unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  Moreover, an ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  The ALJ found the medical records generally demonstrated normal mental status examinations, and noted Plaintiff lives independently, shops, plays basketball, attends AA meetings, takes college courses, reads, makes music, and engages in other activities inconsistent with Dr. Arnold's opinion.  Tr. 24.  Plaintiff also was independent in his personal care and household chores, manages his finances, runs errands, gets along with his roommates and visits other people.  Tr. 23.  Plaintiff argues the ALJ failed to specific which medical records demonstrated benign findings that are inconsistent with Dr. Arnold's opinion, ECF No. 14 at 12, however, the ALJ provided an analysis of the benign examinations earlier in the decision, Tr. 22.  Plaintiff sets forth arguments as to why some of the individual activities are not inconsistent

ORDER - 24

1  with Dr. Arnold's opinion, ECF No. 14 at 13, but his reported activities taken as a

2  whole are inconsistent with disabling mental health symptoms.  Further, any error

3  in the ALJ's analysis of Plaintiff's activities would be harmless as the ALJ gave

4  other specific and legitimate reasons to reject Dr. Arnold's opinion.  *See Molina*,

5  674 F.3d at 1115.

6         Lastly, the ALJ gave more weight to the opinions of the State agency

7  consultants and the psychological expert whom testified at Plaintiff's hearing, Dr.

8  Winfrey, than to Dr. Arnold's opinion.  Tr. 24.  Generally, an ALJ should accord

9  more weight to the opinion of an examining physician than to that of a non-

10  examining physician.  *See Andrews*, 53 F.3d at 1040-41.  However, the opinion of

11  a nonexamining physician may serve as substantial evidence if it is "supported by

12  other evidence in the record and [is] consistent with it."  *Id*. at 1041.  The ALJ

13  gave great weight to Dr. Winfrey's opinion, in which Dr. Winfrey opined Plaintiff

14  had disabling limitations when using substances, but had less than disabling

15  limitations when he maintains sobriety, as discussed *supra*.  Tr. 24.  The ALJ also

16  gave substantial weight to the State agency psychological consultants, who opined

17  Plaintiff has no more than moderate mental health limitations.  Tr. 24, 84-85, 107-

18  08.  The ALJ found the opinions are supported by the record, including evidence of

19  Plaintiff's symptom improvement with sobriety, his admission that his substance

20  abused caused him to lose jobs, the largely normal mental status examinations, and

1    Plaintiff's activities of daily living, and the opinions are largely consistent with

2    each other.  Tr. 24.

3        Plaintiff contends Dr. Winfrey's opinion is consistent with Dr. Arnold's and

4    that Dr. Winfrey did not address if Plaintiff can complete a normal

5    workday/workweek, ECF No. 14 at 12, however, while Dr. Arnold opined Plaintiff

6    had a marked limitation, Dr. Winfrey opined that without DAA, Plaintiff has no

7    more than moderate limitations, Tr. 44-45, and Dr. Winfrey opined Plaintiff's only

8    limitations without DAA are a need for simple, routine, repetitive work that is a

9    less-stressful type environment, Tr. 45, which indicates Plaintiff can sustain a

10   normal workday/workweek.  While Plaintiff argues the ALJ did not address the

11   State agency consultants' opinion that Plaintiff's concentration, persistence, or

12   pace would be diminished when symptomatic, Plaintiff concedes the opinion

13   indicates Plaintiff could maintain attention to complete a workday.  ECF No. 14 at

14   12, 85, 107.  The ALJ accounted for the limitations by limiting Plaintiff to simple,

15   routine tasks.  Tr. 20.

16       The ALJ gave specific and legitimate reasons, supported by substantial

17   evidence, to reject Dr. Arnold's opinion.

18       *2.  Dr. Petaja*

19       On January 27, 2018, Dr. Petaja reviewed two of Plaintiff's examinations,

20   including Dr. Arnold's examination, and provided an opinion on Plaintiff's

functioning.  Tr. 457.  Dr. Petaja opined Dr. Arnold's opinion was reasonable, with

the possible exception of Dr. Arnold finding Plaintiff's severely limited in adapting

to changes in a routine work setting, which is likely less than severe.  *Id.*  The ALJ

gave Dr. Petaja's opinion little weight.  Tr. 24-25.  As Dr. Petaja is a non-

examining source, the ALJ must consider the opinion and whether it is consistent

with other independent evidence in the record.  *See* 20 C.F.R. §§ 404.1527(b),

(c)(1), 416.927(b),(c)(1); *Tonapetyan,* 242 F.3d at 1149; *Lester*, 81 F.3d at 830-31.

First, the ALJ noted Dr. Petaja only reviewed the two examinations and did

not have access to evidence demonstrating Plaintiff's improvement with sobriety

and his admission that his substance use impacted his ability to work.  Tr. 25.  The

extent to which a medical source is "familiar with the other information in [the

claimant's] case record" is relevant in assessing the weight of that source's medical

opinion.  *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).  While Plaintiff argues

this was not a proper reason to reject the opinion as Dr. Petaja reviewed

examinations that took place both before and after Plaintiff's date of sobriety, the

ALJ properly considered Dr. Petaja's lack of access to additional records that may

have impacted her opinion given Plaintiff's improvement with extended sobriety.

Second, the ALJ found Dr. Petaja's opinion was inconsistent with Plaintiff's

activities of daily living.  Tr. 25.  An ALJ may discount a medical source opinion

to the extent it conflicts with the claimant's daily activities.  *Morgan*, 169 F.3d at

601-02. As discussed *supra,* the ALJ's analysis that Plaintiff's sum of activities is inconsistent with disabling mental health limitations is supported by substantial evidence.

Lastly, the ALJ gave more weight to the opinions of the State agency consultants and Dr. Winfrey than to Dr. Petaja's opinion. Tr. 25. As discussed *supra,* the ALJ found the medical evidence supports the State agency opinions and Dr. Winfrey's opinion, and the ALJ's finding that the opinions are inconsistent with Dr. Petaja's opinion is supported by substantial evidence. The ALJ's finding that Dr. Petaja's opinion is inconsistent with the evidence is supported by substantial evidence.

### 3. *Dr. Cline*

On December 7, 2016, Dr. Cline performed a psychological evaluation and provided and provided an opinion on Plaintiff's functioning. Tr. 446-51. Dr. Cline diagnosed Plaintiff with panic disorder, unspecified trauma or stressor-related disorder (rule out PTSD), cocaine use disorder in early full remission, alcohol use disorder in early full remission, and personality disorder NOS with significant features of antisocial personality disorder (provisional but primary). Tr. 448. Dr. Cline opined Plaintiff's anxiety/panic and trauma-related symptoms cause moderate limitations, and his maladaptive personality traits cause moderate to marked limitations. Tr. 447-48. Dr. Cline further opined Plaintiff has no to mild

ORDER - 28

1    limitations in understanding, remembering and persisting in tasks by following

2    short and simple instructions or detailed instructions, performing activities within a

3    schedule, maintaining regular attendance and being punctual without special

4    supervision, learning new tasks, performing routine tasks without special

5    supervision, and asking simple questions or requesting assistance; moderate

6    limitations in adapting to changes in a routine setting, making simple work-related

7    decisions, being aware of normal hazards and taking appropriate precautions,

8    communicating and performing effectively in a work setting, setting realistic goals

9    and planning independently, and completing a normal workday/workweek without

10   interruptions from psychological symptoms; and marked limitations in maintaining

11   appropriate behavior in a work setting. Tr. 449. She also opined the limitations

12   will last three to nine months with treatment, and a protective payee is

13   recommended. *Id.* The ALJ gave Dr. Cline's opinion partial weight. Tr. 24. As

14   Dr. Cline's opinion is contradicted by the opinion of Dr. Winfrey, Tr. 42-45, the

15   ALJ was required to give specific and legitimate reasons, supported by substantial

16   evidence, to reject Dr. Cline's opinion. *See Bayliss,* 427 F.3d at 1216.

17          The ALJ found Dr. Cline's opinion set forth temporary limitations that do

18   not meet the duration requirement. Tr. 24. Temporary limitations are not enough

19   to meet the durational requirement for a finding of disability. 20 C.F.R. §§

20   404.1505(a), 416.905(a) (requiring a claimant's impairment to be expected to last

for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A)

(same); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir.

2008) (affirming the ALJ's finding that treating physicians' short-term excuse from

work was not indicative of "claimant's long-term functioning").  Dr. Cline opined

Plaintiff's limitations would last three to nine months, Tr. 449, which does not

meet the duration requirement.  Plaintiff contends his limitations meet the duration

requirement as he alleges his disability began in 2013, ECF No. 14 at 15, however

Dr. Cline did not provide an opinion on Plaintiff's onset date, Tr. 448, and Plaintiff

sets forth no argument as to how the opinion meets the duration requirement

beyond his bare assertion that it does.  This was a specific and legitimate reason to

reject Dr. Cline's opinion.

Plaintiff contends the ALJ erred in assigning weight to Dr. Cline's finding of

inconsistencies in Plaintiff's examination, ECF No. 14 at 15 (citing Tr. 24), as Dr.

Cline did not specifically find any inconsistencies in the examination.  Dr. Cline

noted that Plaintiff endorsed the cardinal symptoms of PTSD but presented as

though he may have researched the condition before the examination, and Dr.

Cline found it "odd" that while Plaintiff reported severe anxiety symptoms, he did

not present with any overt symptoms of anxiety.  Tr. 446-48.  Dr. Cline also noted

Plaintiff reported his anxiety/panic as being in the marked to severe range, but she

found that severity "questionable based on his presentation and his statement that

he is seeking medication." Tr. 447. Dr. Cline further stated Plaintiff's endorsement of anxiety symptoms "does not match his presentation at all," and that his stated desire to seek medications is contraindicated by his substance abuse history. Tr. 449. While Dr. Cline did not explicitly use the word inconsistency, the ALJ reasonably interpreted her report as finding inconsistencies in Plaintiff's examination.

As such, the ALJ gave specific and legitimate reasons, supported by substantial evidence, to reject Dr. Cline's opinion, and did not error in giving weight to Dr. Cline's finding of inconsistencies in Plaintiff's examination.

*4. Mr. Elster*

On July 25, 2018, Mr. Elster, Plaintiff's treating counselor, provided an opinion on Plaintiff's functioning. Tr. 492-95. Mr. Elster opined Plaintiff has mild limitations in remembering locations and work-like procedures, and carrying out very short, simple instructions; moderate limitations in understanding and remembering short and simple instructions, understanding and remembering detailed instructions, carrying out detailed instructions, sustaining an ordinary routine without special supervision, making simple work-related decisions, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness, responding

ORDER - 31

appropriately to changes in the work setting, being aware of normal hazards and taking appropriate precautions, setting realistic goals or making plans independently of others, understanding, remembering, or applying information, and adapting or managing oneself; marked limitations in maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance and being punctual, working in coordination with or proximity to others without being distracted by them or exhibiting behavioral extremes, traveling to unfamiliar places or using public transportation, and concentrating, persisting or maintaining pace; and extreme limitations in interacting with others. Tr. 492-94. The ALJ gave Mr. Elster's opinion little weight. Tr. 25. As Mr. Eslter is not an acceptable medical source, the ALJ was required to give germane reasons to reject the opinion. *See Ghanim,* 763 F.3d at 1161.

First, the ALJ found Mr. Elster had only treated Plaintiff on a few occasions at the time he wrote his opinion. Tr. 25. The number of times a claimant meets with a provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Additionally, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *Id.* Plaintiff concedes Mr. Elster had only seen Plaintiff on a few occasions, but argues this was not a reason

ORDER - 32

to reject the opinion as Mr. Elster had more contact with Plaintiff than any other opinion sources. ECF No. 14 at 17. The ALJ recognized that Mr. Elster had more contact with Plaintiff than the other providers, but found the opinion was entitled to less weight in part because Mr. Elster only saw Plaintiff on a few occasions, and noted Mr. Elster's opinion was inconsistent with other records and opinions in the file, which Mr. Elster did not have access to at the time of his opinion. *See* Tr. 25. This was a germane reason to reject the opinion.

Second, the ALJ found Mr. Elster's opinion contains little to no explanation to support the check-box form. Tr. 25. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. For this reason, individual medical opinions are preferred over check-box reports. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). However, if treatment notes are consistent with the opinion, a conclusory opinion, such as a check-the-box form, may not automatically be rejected. *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014); *see also Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form"). Mr. Elster's opinion contains three pages of checked boxes, with three written sentences, one of which only says "[Plaintiff] reports a history of receiving medication to address anxiety dating back

to 2016." Tr. 492-95. Mr. Elster also wrote that Plaintiff presents with notable

anxiety which inhibits his ability to function, and he is in outpatient counseling and

awaiting medication management services. Tr. 495. Mr. Elster did not provide

any further explanation, such as specifics as to why Plaintiff would be off task

more than 30 percent of the time or would miss four or more days per month, or

why he has extreme limitations in his ability to interact with others. Plaintiff

argues Mr. Elster's treatment records provide further support for his opinion, such

as notes that Plaintiff presented using minimal words, he was depressed, anxious,

and uncomfortable. Tr. 488-89. However, Mr. Elster's notes contain minimal

evidence of abnormalities and do not provide support for such extreme limitations.

This was a germane reason to reject Mr. Elster's opinion.

Third, the ALJ found Mr. Elster's opinion is inconsistent with the record as a

whole, including Mr. Elster's own treatment records, the largely benign mental

status findings, Plaintiff's reported functional abilities, and the opinions of the

State agency psychologists and Dr. Winfrey. Tr. 25. An ALJ may discredit

physicians' opinions that are unsupported by the record as a whole. *Batson,* 359

F.3d at 1195. As discussed *supra,* Plaintiff's activities of daily living are

inconsistent with disabling limitations, and Mr. Elster's treatment records do not

support the marked and extreme limitations set forth in his opinion. The ALJ's

finding that the State agency opinions and Dr. Winfrey's opinions are inconsistent

ORDER - 34

with Mr. Elster's opinion is supported by substantial evidence.  This was a germane reason to reject the opinion.

Lastly, the ALJ found Mr. Elster is not an acceptable medical source.  Tr. 25.  The ALJ is required to consider evidence from non-acceptable medical sources.  20 C.F.R. §§ 404.1527, 416.927 (2012).  Although an individual's status as a medically acceptable source may impact the amount of deference the ALJ gives to an opinion, the ALJ may not reject an opinion as to a claimant's limitations because the opinion comes from a non-acceptable medical source.  *Id.* As the ALJ did not reject the opinion solely because Mr. Elster is not an acceptable medical source, but rather considered this factor along with the factors discussed *supra,* this was a germane reason to give less weight to Mr. Elster's opinion than to those of other acceptable medical sources.

In summary, the ALJ did not error in his analysis of the opinions of Dr. Arnold, Dr. Pataja, Dr. Cline, and Mr. Elster.  Plaintiff is not entitled to remand on these grounds.

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 14 at 18-21.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL

1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester*, 81 F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

ORDER - 36

1    Factors to be considered in evaluating the intensity, persistence, and limiting

2    effects of a claimant's symptoms include: 1) daily activities; 2) the location,

3    duration, frequency, and intensity of pain or other symptoms; 3) factors that

4    precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

5    side effects of any medication an individual takes or has taken to alleviate pain or

6    other symptoms; 5) treatment, other than medication, an individual receives or has

7    received for relief of pain or other symptoms; 6) any measures other than treatment

8    an individual uses or has used to relieve pain or other symptoms; and 7) any other

9    factors concerning an individual's functional limitations and restrictions due to

10    pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

11    404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

12    an individual's record," to "determine how symptoms limit ability to perform

13    work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

14        The ALJ found that Plaintiff's medically determinable impairments could

15    reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

16    statements concerning the intensity, persistence, and limiting effects of his

17    symptoms were not entirely consistent with the evidence.  Tr. 21.

18        *1. Objective Medical Evidence*

19        The ALJ found that the objective evidence is inconsistent with Plaintiff's

20    claims of disabling mental health symptoms.  Tr. 21-23.  An ALJ may not discredit

ORDER - 37

1  a claimant's symptom testimony and deny benefits solely because the degree of the

2  symptoms alleged is not supported by objective medical evidence.  *Rollins v.*

3  *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341,

4  346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*,

5  400 F.3d at 680.  However, the objective medical evidence is a relevant factor,

6  along with the medical source's information about the claimant's pain or other

7  symptoms, in determining the severity of a claimant's symptoms and their

8  disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2),

9  416.929(c)(2).

10         The ALJ noted that the medical records contain abnormal mental status

11  finding largely in the context of Plaintiff engaging in substance use and seeking

12  prescription medications.  Tr. 22 (citing, e.g., Tr. 417, 422).  The ALJ found the

13  records showed significant improvement in his mental health symptoms when

14  Plaintiff sustained sobriety, which is inconsistent with Plaintiff's allegations of

15  ongoing disabling symptoms despite sobriety.  Tr. 22 (citing, e.g., Tr. 452-56,

16  488). The ALJ also noted Dr. Cline specifically found Plaintiff's presentation was

17  inconsistent with his reported symptoms and Dr. Cline noted Plaintiff reported he

18  was seeking medication and appeared to have researched PTSD as he knew how to

19  describe the symptoms in such a way as to obtain the diagnosis.  Tr. 23 (citing Tr.

20  397-98).

ORDER - 38

On this record, the ALJ reasonably concluded that the objective evidence is inconsistent with Plaintiff's symptom claims. This finding is supported by substantial evidence and was a clear and convincing reason, along with the other reasons discussed herein, to discount Plaintiff's symptom complaints.

### 2. Inconsistent Statements

The ALJ found Plaintiff made inconsistent statements about his symptoms and substance use. Tr. 21-23. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."). Moreover, evidence that the claimant was motivated by secondary gain is sufficient to support an ALJ's rejection of testimony. *Matney,* 981 F.2d at 1020. Therefore, the tendency to exaggerate or engage in manipulative conduct during the administrative process is a permissible reason to discount the credibility of the claimant's reported symptoms. *Tonapetyan*, 242 F.3d at 1148.

The ALJ found Plaintiff made several inconsistent statements regarding his symptoms and substance use. Tr. 23. While Plaintiff alleges disabling limitations

ORDER - 39

1  in part due to PTSD resulting from exposure to trauma, Plaintiff denied any history

2  of trauma on an intake form. *Id.* (citing Tr. 333). Plaintiff's testimony at his

3  hearing regarding his sobriety date of April 27, 2017 conflicted with Plaintiff's

4  reports to multiple treating and examining sources, Plaintiff's reported dates of

5  sobriety were inconsistent with a January 2017 DUI, and he made inconsistent

6  statements about his date of last cocaine use. Tr. 23 (citing, e.g., Tr. 329, 405, 409,

7  441, 452, 487). While Plaintiff presents an alternative interpretation of the

8  evidence of Plaintiff's substance use, the ALJ's interpretation of the evidence was

9  reasonable, and as such the ALJ's finding will not be disturbed. *See Tommasetti v.*

10 *Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence is susceptible

11 to more than one rational interpretation" the court will not reverse the ALJ's

12 decision).

13        On this record, the ALJ reasonably concluded that Plaintiff inconsistently

14 reported his substance use and PTSD symptom origin. This finding is supported

15 by substantial evidence and was a clear and convincing reason to discount

16 Plaintiff's symptoms complaints.

17        *3. Activities of Daily Living*

18        The ALJ found Plaintiff's activities of daily living are inconsistent with his

19 symptom claims. Tr. 23. The ALJ may consider a claimant's activities that

20 undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a

ORDER - 40

1  substantial part of the day engaged in pursuits involving the performance of

2  exertional or non-exertional functions, the ALJ may find these activities

3  inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*,

4  674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to

5  be eligible for benefits, the ALJ may discount a claimant's symptom claims when

6  the claimant reports participation in everyday activities indicating capacities that

7  are transferable to a work setting" or when activities "contradict claims of a totally

8  debilitating impairment." *Molina*, 674 F.3d at 1112-13.

9      The ALJ found Plaintiff's activities of daily living are inconsistent with

10  Plaintiff's allegation of disabling mental health limitations. Tr. 23. The ALJ noted

11  Plaintiff is independent in his personal care and household chores, shops

12  independently, manages his finances, runs errands, visits with others, attends AA

13  meetings, gets along with his roommates, and enjoys reading and making music.

14  Tr. 23 (citing Tr. 397, 453, 485, 489). Plaintiff argues the activities are not

15  inconsistent with Plaintiff's allegations of an inability to work outside of the home

16  as most take place in his home and he reported having difficulties with several of

17  the activities, including having to stop taking college classes. ECF No. 14 at 21.

18  Plaintiff argues he is not friends with his roommates and leaves his home only

19  once every two weeks. *Id.* (citing Tr. 488). However, Plaintiff reported getting

20  along well with his roommates, and reported he has a good relationship with his

ORDER - 41

family members.  Tr. 488.  During a February 2017 appointment when Plaintiff

was seeking prescription medication, he reported having difficulty completing

tasks such as attending appointments because of his anxiety.  Tr. 435.  However,

during much of the relevant period, Plaintiff also managed to attend counseling and

medication management appointments, outpatient treatment appointments, and

reported running errands "most of the day," and visiting others.  Tr. 23, 397, 453.

While Plaintiff offers a different interpretation of the evidence, the ALJ reasonably

found Plaintiff's activities of daily living are inconsistent with his claims of

disabling mental health limitations.

　　　As such, the ALJ set forth clear and convincing reasons, supported by

substantial evidence, to reject Plaintiff's symptom claims.  Plaintiff is not entitled

to remand on these grounds.

## CONCLUSION

　　　Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

　　　1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

　　　2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is

**GRANTED**.

　　　3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

ORDER - 42

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED September 15, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 43